FILED

2020 Dec-04  AM 09:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| Cesar CASTRO,<br>Evelio CRUZ-HERNANDEZ,<br>Gervin GALVEZ,<br>Javier HERNANDEZ,<br>Erick LUNA-PANTALEON,<br>Wilfredo OLLARVES,<br>Migdoel PEREZ,<br>Raquel RECINOS,<br>Denis REYES,<br>Guadalupe RIOS,<br>Claudio SANCHEZ-MAIRENA,<br>Durlin SANTIAGO,<br><br>     *Plaintiffs*,<br><br>v.<br><br>MATA ELECTRIC LLC,<br>MATA CONSTRUCTION LLC,<br>Erick MATA, and<br>Tina Annette SHARPE,<br><br>     *Defendants*. | ***JURY TRIAL DEMANDED***<br><br><br>Civil Case No.: |

**COMPLAINT
FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT AND ALABAMA LAW**

**INTRODUCTION**

1.      Plaintiffs Cesar Castro, Evelio Cruz Hernandez, Gervin Galvez, Javier Hernandez,

Erick Luna Pantaleon, Wilfredo Ollarves, Migdoel Perez, Raquel Recinos, Denis Reyes,

Guadalupe Rios, Claudio Sanchez Mairena, and Durlin Santiago (collectively, "Plaintiffs" or "the

Workers") bring this action against their employers, Mata Electric LLC, Mata Construction LLC,

Erick Mata, and Tina Annette Sharpe (collectively, "Defendants"), for violations of the Fair Labor

Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* (hereinafter "FLSA" or "Act") and for breach of contract and violation of the Civil Worthless Check Act under Alabama law.

2.      Defendants obtained lucrative subcontracts as part of a set of major taxpayer-funded Jefferson County Schools capital projects[1] to complete electrical installation and repair work at several public-school remodeling and construction sites. Defendants hired the Workers to complete various aspects of the projects, yet failed to compensate them for tens of thousands of dollars of their hard-earned wages. Defendants engaged in a pattern of knowingly paying the Workers with worthless checks, and eventually began failing to issue many of the Workers any paycheck whatsoever.

3.      The Workers seek to recover unpaid minimum wage and overtime payments, liquidated damages, reasonable attorney's fees and costs of suit for Defendants' violations of the Act; and compensatory and punitive damages, reasonable attorney's fees and prejudgment interest for Defendants' related violations of Alabama law.

## JURISDICTION AND VENUE

4.      Count One arises under the FLSA, 29 U.S.C. § 216(b), and thus is subject to the jurisdiction of this Court pursuant to 28 U.S.C. § 1331.

5.      Counts Two and Three arise under Alabama Law and are part of the same case or controversy as Count One, and thus are subject to the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367(a).

6.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the Workers' claims occurred in this district.

---

[1] *See* Jefferson County Schools, Capital Projects, https://www.jefcoed.com/Page/3999 (last accessed Dec. 2, 2020).

**PARTIES**

7.     Plaintiff Cesar Castro ("Mr. Castro") is an adult resident of the state of Alabama. He is a former employee of Defendants.

8.     Plaintiff Evelio Cruz Hernandez ("Mr. Cruz") is an adult resident of the state of Alabama. He is a former employee of Defendants.

9.     Plaintiff Gervin Galvez ("Mr. Galvez") is an adult resident of the state of Alabama. He is a former employee of Defendants.

10.     Plaintiff Javier Hernandez ("Mr. Hernandez") is an adult resident of the state of Alabama. He is a former employee of Defendants.

11.     Plaintiff Erick Luna Pantaleon ("Mr. Luna") is an adult resident of the state of Alabama. He is a former employee of Defendants.

12.     Plaintiff Wilfredo Ollarves ("Mr. Ollarves") is an adult resident of the state of Alabama. He is a former employee of Defendants.

13.     Plaintiff Migdoel Perez ("Mr. Perez") is an adult resident of the state of Alabama. He is a former employee of Defendants.

14.     Plaintiff Raquel Recinos ("Ms. Recinos") is an adult resident of the state of Alabama. She is a former employee of Defendants.

15.     Plaintiff Denis Reyes ("Mr. Reyes") is an adult resident of the state of Alabama. He is a former employee of Defendants.

16.     Plaintiff Guadalupe Rios ("Mr. Rios") is an adult resident of the state of Alabama. He is a former employee of Defendants.

17.     Plaintiff Claudio Sanchez Mairena ("Mr. Sanchez") is an adult resident of the state of Alabama. He is a former employee of Defendants.

18.     Plaintiff Durlin Santiago ("Ms. Santiago") is an adult resident of the state of Alabama. She is a former employee of Defendants.

19.     At all times relevant to this complaint, the Workers were employees of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1), and were engaged in interstate commerce or the production of goods for interstate commerce.

20.     Defendant Mata Electric LLC ("Mata Electric") is an Alabama corporation. According to records on file with the Alabama Secretary of State, Mata Electric currently has no registered agent; at the time the prior registered agent resigned in August 2020, she provided the following address as the last known address for the corporation: 511 Pinson Parkway, Birmingham, AL 35217. This is also the address listed for Mata Electric on paychecks issued to the Workers. At all times relevant to this complaint, Mata Electric conducted business in the state of Alabama, and employed the Workers within the meaning of the Act, 29 U.S.C. § 203(d).

21.     Defendant Mata Construction LLC ("Mata Construction") is an Alabama corporation with its registered address at 511 Pinson Parkway, Birmingham, AL 35217. At all times relevant to this complaint, Mata Construction conducted business in the state of Alabama, and employed the Workers within the meaning of the Act, 29 U.S.C. § 203(d).

22.     Defendant Erick Mata is generally recognized by the Workers as the owner or co-owner and manager of Mata Electric and related companies along with Defendant Sharpe, and held himself out as such in his dealings with the Workers and others. He employed the Workers within the meaning of the Act, 29 U.S.C. § 203(d).

23.     Defendant Tina Annette Sharpe is generally recognized by the Workers as the co-owner and manager of Mata Electric and related companies along with Defendant Mata. She signed the paychecks issued to the Workers on behalf of Mata Electric and Mata Construction. She

is also listed as the registered agent, organizer, and manager of Mata Construction in corporate papers filed with the Alabama Secretary of State. She employed the Workers within the meaning of the Act, 29 U.S.C. § 203(d).

24.     At all times relevant to this complaint, Defendants had employees engaged in commerce or the production of goods for commerce, as defined by §203(s)(1) of the FLSA. On information and belief, Defendants Mata Electric and Mata Construction had an annual gross volume of sales made or business done not less than $500,000.00.

## FACTUAL ALLEGATIONS

***Defendants hired the Workers to perform electrical work at Jefferson County Schools Capital Projects and other locations, and then paid them with worthless checks or failed to issue them any paycheck whatsoever***

25.     Defendants hired the Workers to perform electrical installation and repair work at various job sites around the greater Birmingham area, including several major public-school renovation and construction projects for Jefferson County Schools in Pinson and Hueytown, Alabama, as part of a series of major capital projects undertaken by the Jefferson County Board of Education.

26.     Defendants, either personally or through job site supervisors under their direct management, set each Worker's hours and tasks, and supervised their work.

27.     Defendants supplied all of the materials used by the Workers on the job. Defendants also supplied the Workers with some of the tools they needed to complete their job tasks, although several Workers also brought some of their own personal tools, as is customary for workers employed in the electrical field.

28.     The Workers worked between six and ten hours per day, five to six days per week.

29.     Each Worker was paid an hourly wage for the labor they performed for Defendants.

30.     The Workers were paid on a weekly basis by checks drawn on the accounts of Defendants Mata Electric or Mata Construction. The checks were usually signed by Defendant Sharpe.

31.     On information and belief, Defendants classified the Workers as if they were independent contractors despite the Workers' high degree of economic dependence on Defendants and Defendants' close management and control of the Workers' labor.

32.     With respect to some pay periods, Defendants appear to have compensated at least some of the Workers at the federally-required overtime rate of one-and-one-half times their regular wage when they worked over forty hours in any given workweek. But it appears Defendants did not consistently pay overtime to all the Workers for all of the pay periods they worked. Moreover, as described in greater detail below, Defendants failed to pay the Workers overtime compensation—or any wages whatsoever—for those pay periods where they issued the Workers worthless checks or failed to issue them a paycheck.

33.     Defendants deducted a percentage from some or all of the Workers' wages each pay period. Defendants informed several of the Workers that this deduction was made to cover the cost of insurance for workplace injuries.

34.     The Workers began experiencing problems with their paychecks within weeks or months of being hired, dating backs months or even years. On repeated occasions, the checks were rejected for insufficient funds when the Workers attempted to deposit them in their own bank accounts or to cash the checks at Defendant's bank or another financial institution, sometimes leading to the Workers being charged a fee for the bounced checks.

35.     Defendants engaged in a pattern over the course of several months of repeatedly issuing the Workers paychecks with insufficient funds, knowing full well that the checks lacked

sufficient funds to be honored by Defendants' bank, thus depriving the Workers of their wages. On multiple occasions Defendants, either personally or through their agents, representatives, or employees, informed the Workers that their paychecks lacked sufficient funds when delivering the checks to the Workers.

36.     After experiencing repeated problems with bounced paychecks and resulting bank fees and other financial losses, several of the Workers began attempting to cash their paychecks at the Hoover branch of Defendants' bank, BancorpSouth. On several occasions, BancorpSouth branch employees declined to cash the Workers' checks, informing them that Defendants' account lacked sufficient funds.

37.     When these problems arose in the past, the Workers would usually notify Defendant Mata or another representative of Defendants, and Defendants would eventually reissue them a new check for the amount of the original paycheck plus any bank fees incurred by the Workers as a result of the bounced checks. It often took weeks for the Workers to receive payment of their wages.

38.     In or around August 2020, Defendants started failing to reimburse the Workers for their bounced paychecks, and eventually failed to issue many of the Workers any paychecks whatsoever or otherwise compensate them for their labor for their final weeks of work.

39.     As detailed below, each Plaintiff is owed one or more weeks of unpaid regular wages and, where applicable, overtime compensation. Several Plaintiffs are also owed additional unpaid wages, unreimbursed bank fees, and other damages suffered as a result of the worthless checks issued to them by Defendants.

40.     The Workers stopped working for Defendants in or around late August or early September due to the repeated issues they faced with the bounced paychecks, late payment, and complete non-payment of wages.

***Plaintiff Cesar Castro's Unpaid Wages and Bounced Paychecks***

41.     Plaintiff Cesar Castro began working for Defendants in or around June 2020. He had previously worked for Defendants several years prior.

42.     Defendants agreed to pay Mr. Castro an hourly wage of $18.00 per hour.

43.     Defendants initially sent Mr. Castro to work on a project at Rudd Middle School in Pinson, Alabama (the "Rudd Middle School project"). They subsequently sent him to another project remodeling the Hueytown Middle School in Hueytown, Alabama (the "Hueytown Middle School project").

44.     Mr. Castro's typical weekly work schedule was from approximately 7:00 AM to 5:30 PM on Monday through Friday, and 7:00 AM to 3:30 PM on Saturday, with a 30- to 45-minute lunch break each day.

45.     Within several weeks of starting work, Mr. Castro started to experience problems with his paychecks. On at least one occasion, his paycheck was returned by his bank for insufficient funds after he attempted to deposit it in his account, and he was charged a fee for the bounced check. Defendants subsequently issued him a new check and reimbursed him for the fee.

46.     Starting in early August, Defendants issued Mr. Castro four paychecks with insufficient funds: (1) a check for $1,170.00, dated August 7, 2020, (2) a check for $882.00, dated August 14, 2020, (3) a check for $267.00, also dated August 14, 2020, and (4) a check for $1,170, dated August 27, 2020. To date, Mr. Castro has not been able to deposit or cash these checks, and

Defendants have not reimbursed him for the bounced checks or otherwise compensated him for his labor performed during those pay periods.

47.     Defendants also owe Mr. Castro for his last week of work in late August and/or early September, during which he worked approximately forty hours at the Hueytown Middle School project. Defendants never issued him a paycheck and never paid him any wages whatsoever for his labor performed during that pay period.

### Plaintiff Evelio Cruz Hernandez's Bounced Paycheck

48.     Plaintiff Evelio Cruz Hernandez began working for Defendants in or around November 2019. He had previously worked for Defendants several years prior, and had also experienced problems with late pay and bounced checks during that time.

49.     Defendants initially agreed to pay Mr. Cruz an hourly wage of $18.00 per hour. Several months later, they agreed to raise his wage to $20.00 per hour.

50.     Defendants sent Mr. Cruz to work on the Hueytown Middle School project.

51.     Mr. Cruz's typical weekly work schedule was from approximately 7:00 AM to 5:30 PM on Monday through Saturday, with a 30- to 45-minute lunch break each day.

52.     Within several weeks of starting work, Mr. Cruz started to experience problems with his paychecks. When he quit his job with Defendants due to lack of pay in mid-August 2020, Defendants owed him at least three paychecks with insufficient funds. Defendants subsequently reimbursed him in cash for two of the bounced checks.

53.     Mr. Cruz is still his owed for one paycheck with insufficient funds for $1,040.00, dated August 21, 2020. To date, Mr. Cruz has not been able to deposit or cash this check, and Defendants have not reimbursed him for the bounced check or otherwise compensated him for his labor performed during that pay period.

*Plaintiff Gervin Galvez's Unpaid Wages and Bounced Paychecks*

54.    Plaintiff Gervin Galvez began working for Defendants in the spring or summer of 2020.

55.    Defendants agreed to pay Mr. Galvez an hourly wage of $14.00 per hour.

56.    Defendants sent Mr. Galvez to work on the Hueytown Middle School project.

57.    Mr. Galvez's typical weekly work schedule was from approximately 7:00 AM to 6:00 PM on Monday through Saturday, with a 30- to 45-minute lunch break each day.

58.    Starting in mid-August, Defendants issued Mr. Galvez three paychecks with insufficient funds: (1) a check for $717.50, dated August 14, 2020, (2) a check for $763.70, dated August 21, 2020, and (3) a check for $193.00, dated August 27, 2020. To date, Mr. Galvez has not been able to deposit or cash these checks, and Defendants have not reimbursed him for the bounced checks or otherwise compensated him for his labor performed during those pay periods.

59.    Defendants also owe Mr. Galvez for his last week of work in late August and/or early September, during which he worked approximately sixty hours at the Hueytown Middle School project. Defendants never issued him a paycheck and never paid him any wages whatsoever for his labor performed during that pay period.

*Plaintiff Javier Hernandez's Unpaid Wages and Bounced Paycheck*

60.    Plaintiff Javier Hernandez began working for Defendants in the spring or summer of 2020.

61.    Defendants agreed to pay Mr. Hernandez an hourly wage of $15.00 per hour.

62.    Defendants initially sent Mr. Hernandez to work on the Rudd Middle School project. They subsequently sent him to work on a school construction project at Hueytown Intermediate School in Hueytown, Alabama (the "Hueytown Intermediate School project").

63.     Mr. Hernandez's typical weekly work schedule was from approximately 7:00 AM to 5:30 PM on Monday through Friday, and 7:00 AM to 3:00 PM on Saturday, with a 30- to 45- minute lunch break each day.

64.     In or around August 2020, Defendants issued Mr. Hernandez a paycheck for $770.25 with insufficient funds. To date, Mr. Hernandez has not been able to deposit or cash this check, and Defendants have not reimbursed him for the bounced check or otherwise compensated him for his labor performed during that pay period.

65.     Mr. Hernandez's credit union charged him a fee for the bounced check, and subsequently closed his account due to the negative balance from the bounced check and resulting fee. He is no longer able to access his account.

66.     Defendants also owe Mr. Hernandez for his last two weeks of work in late August and/or early September, during which he worked approximately fifty-six hours each week at the Hueytown Intermediate School project. Defendants never issued him a paycheck and never paid him any wages whatsoever for his labor performed during those pay periods.

*Plaintiff Erick Luna Pantaleon's Bounced Paycheck*

67.     Plaintiff Erick Luna Pantaleon began working for Defendants in or around July 2020.

68.     Defendants agreed to pay Mr. Luna an hourly wage of $16.00 per hour.

69.     Defendants initially sent Mr. Luna to work on the Hueytown Intermediate School project.

70.     Mr. Luna's typical weekly work schedule was from approximately 7:00 AM to 5:00 PM on Monday through Friday, with a 30- to 45-minute lunch break each day.

11

71.     On August 27, 2020, Defendants issued Mr. Luna a paycheck for $622.00 with insufficient funds. To date, Mr. Luna has not been able to deposit or cash this check, and Defendants have not reimbursed him for the bounced check or otherwise compensated him for his labor performed during that pay period.

72.     Mr. Luna's bank charged him a fee for the bounced check.

*Plaintiff Wilfredo Ollarves's Bounced Paychecks*

73.     Plaintiff Wilfredo Ollarves began working for Defendants in or around June 2020.

74.     Defendants agreed to pay Mr. Ollarves an hourly wage of $16.00 per hour.

75.     Defendants initially sent Mr. Ollarves to work on the Rudd Middle School project. They subsequently sent him to work on the Hueytown Intermediate School project.

76.     Mr. Ollarves's typical weekly work schedule was from approximately 7:00 AM to 5:30 PM on Monday through Friday, and 7:00 AM to 3:30 PM on Saturday, with a 30- to 45-minute lunch break each day.

77.     On August 27, 2020, Defendants issued Mr. Ollarves two paychecks with insufficient funds: (1) a check for $1,159.50, and (2) a check for $856.00. The first check was issued to reimburse Mr. Ollarves for a previous week's paycheck that had been returned by Mr. Ollarves's bank for insufficient funds, plus the $12.00 fee he was charged by the bank. To date, Mr. Ollarves has not been able to cash these checks, and Defendants have not reimbursed him for the bounced checks or otherwise compensated him for his labor performed during those pay periods.

*Plaintiff Migdoel Perez's Unpaid Wages and Bounced Paychecks*

78.     Plaintiff Migdoel Perez began working for Defendants in the spring or summer of 2020.

79.     Defendants agreed to pay Mr. Perez an hourly wage of $25.00 per hour.

80.     Defendants initially sent Mr. Perez to work on the Rudd Middle School project. They subsequently sent him to work on the Hueytown Intermediate School project.

81.     Mr. Perez's typical weekly work schedule was from approximately 7:00 AM to 4:30 PM on Monday through Friday, with a 30- to 45-minute lunch break each day.

82.     On August 27, 2020, Defendants issued Mr. Perez two paychecks with insufficient funds: (1) a check for $1,771.00, and (2) a check for $1,627.00. To date, Mr. Perez has not been able to deposit or cash these checks. In or around late September or early October, Defendant Mata gave Mr. Perez $1,000.00 cash in partial reimbursement for the bounced checks. Defendants have not reimbursed him for the remaining amount of the bounced checks or otherwise compensated him for his labor performed during those pay periods.

83.     Defendants also owe Mr. Perez for his last two weeks of work in late August and early September, during which he worked approximately forty-seven hours and thirty-three hours, respectively, on a project at Evonik Industries laboratory, located on Lakeshore Parkway in Birmingham, Alabama. Defendants never issued him a paycheck and never paid him any wages whatsoever for his labor performed during those pay periods.

***Plaintiff Raquel Recinos's Unpaid Wages and Bounced Paychecks***

84.     Plaintiff Raquel Recinos began working for Defendants in the spring or summer of 2020.

85.     Defendants agreed to pay Ms. Recinos an hourly wage of $13.00 per hour.

86.     Defendants sent Ms. Recinos to work on the Hueytown Middle School project.

87.     Ms. Recinos's typical weekly work schedule was from approximately 7:00 AM to 5:00 PM on Monday through Friday, and 7:00 AM to 11:00 AM on Saturday, with a 30- to 45-minute lunch break each day.

88.     Starting in mid-August, Defendants issued Ms. Recinos two paychecks with insufficient funds: (1) a check for $788.50, dated August 21, 2020, and (2) a check for $599.50, dated August 27, 2020. To date, Ms. Recinos has not been able to deposit or cash these checks, and Defendants have not reimbursed her for the bounced checks or otherwise compensated her for her labor performed during those pay periods.

89.     Defendants also owe Ms. Recinos for her last two weeks of work in late August and/or early September, during which she worked approximately forty-four and forty hours, respectively, at the Hueytown Middle School project. Defendants never issued her a paycheck and never paid her any wages whatsoever for her labor performed during those pay periods.

***Plaintiff Denis Reyes's Unpaid Wages and Bounced Paychecks***

90.     Plaintiff Denis Reyes began working for Defendants in the spring or summer of 2020.

91.     Defendants agreed to pay Mr. Reyes an hourly wage of $17.00 per hour.

92.     When Mr. Reyes began working for Defendants, they initially sent him to work on the Rudd Middle School project. Defendants subsequently sent Mr. Reyes to work on the Hueytown Intermediate School project.

93.     Mr. Reyes worked Monday through Saturday, approximately ten hours per day on Monday through Friday and eight hours per day on Saturday, at the Hueytown Middle School project.

94.     Starting in mid-August, Defendants issued Mr. Reyes three paychecks with insufficient funds: (1) a check for $255.00, dated August 17, 2020, (2) a check for $860.00, dated August 21, 2020, and (3) a check for $1,106.00, dated August 27, 2020. To date, Mr. Reyes has not been able to deposit or cash these checks, and Defendants have not reimbursed him for the bounced checks or otherwise compensated him for his labor performed during those pay periods.

95.     Defendants also owe Mr. Reyes for his last week of work in late August and/or early September, during which he worked approximately fifty-nine hours at the Hueytown Intermediate School project. Defendants never issued him a paycheck and never paid him any wages whatsoever for his labor performed during that pay period.

***Plaintiff Guadalupe Rios's Unpaid Wages***

96.     Plaintiff Guadalupe Rios began working for Defendants about one year ago.

97.     Defendants agreed to pay Mr. Rios an hourly wage of $22.00 per hour.

98.     Defendants sent Mr. Rios to various job sites over the course of his employment. His last assignment for Defendants was on the Hueytown Middle School project.

99.     Mr. Sanchez's typical weekly work schedule was from approximately 7:00 AM to 5:00 PM on Monday through Friday, with a 30- to 45-minute lunch break each day.

100.    Defendants owe Mr. Rios for his last week of work in late August or early September, during which he worked approximately forty-five hours at the Hueytown Middle School project. Defendants never issued him a paycheck and never paid him any wages whatsoever for his labor performed during that pay period.

***Plaintiff Claudio Sanchez Mairena's Unpaid Wages and Bounced Paycheck***

101.    Plaintiff Claudio Sanchez Mairena began working for Defendants about four years ago.

102.    Defendants agreed to pay Mr. Sanchez an hourly wage of $18.00 per hour.

103.    Early on in his employment with Defendants, Mr. Sanchez began experiencing problems with late pay and bounced paychecks. On multiple occasions, he was charged a fee by his bank after depositing paychecks from Defendants that lacked sufficient funds.

104.    Sometime in or around the spring of 2020, Defendants hired Mr. Sanchez out to another company, Revere Control Systems, to perform electrical work at Evonik Industries laboratory in Birmingham. Defendants continued to be responsible for Mr. Sanchez's pay.

105.    Mr. Sanchez's typical weekly work schedule at the Evonik site was from approximately 7:00 AM to 3:00 PM on Monday through Friday, with a 30- to 45-minute lunch break each day.

106.    On August 27, 2020, Defendants issued Mr. Sanchez a paycheck for $831.00 with insufficient funds.[2] To date, Mr. Sanchez has not been able to deposit or cash this check, and Defendants have not reimbursed him for the bounced check or otherwise compensated him for his labor performed during that pay period.

107.    Defendants also owe Mr. Sanchez for his last three weeks of work, during which he worked approximately forty-five, forty-seven, and thirty-six hours, respectively. Defendants never issued him paychecks and never paid him any wages whatsoever for his labor performed during those pay periods.

***Plaintiff Durlin Santiago's Unpaid Wages and Bounced Paycheck***

108.    Plaintiff Durlin Santiago began working for Defendants in or around April 2020.

109.    Defendants agreed to pay Ms. Santiago an hourly wage of $16.00 per hour.

---

[2] Unlike the worthless paychecks issued to the other Plaintiffs, which were drawn on the account of Defendant Mata Electric LLC, the check issued to Mr. Sanchez was drawn on the account of Defendant Mata Construction LLC.

110.    When Ms. Santiago began working for Defendants, they initially sent her to work on the Rudd Middle School project. Defendants subsequently sent Ms. Santiago to work on the Hueytown Intermediate School project.

111.    Ms. Santiago's typical weekly work schedule was from approximately 7:00 AM to 5:30 PM on Monday through Saturday, with a 30- to 45-minute lunch break each day.

112.    On August 27, 2020, Defendants issued Ms. Santiago a paycheck for $856.00 with insufficient funds. To date, Ms. Santiago has not been able to deposit or cash this check, and Defendants have not reimbursed her for the bounced check or otherwise compensated her for her labor performed during that pay period.

113.    Ms. Santiago's bank charged her a fee for the bounced check.

114.    Defendants also owe Ms. Santiago for her last two weeks of work in late August and/or early September, during which she worked approximately fifty and forty hours, respectively, at the Hueytown Intermediate School project. Defendants never issued her paychecks and never paid her any wages whatsoever for her labor performed during those pay periods.

<u>**CLAIMS FOR RELIEF**</u>

**COUNT ONE:**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**(Minimum Wage and Overtime Violations)**
***As to All Plaintiffs***

115.    Plaintiffs re-allege and incorporate by reference the above paragraphs as though fully set forth herein.

116.    Plaintiffs bring this claim against Defendants for violation of the FLSA's minimum wage and overtime provisions, 29 U.S.C. §§ 206 and 207.

117.    For those weeks where Defendants paid the Workers with paychecks lacking sufficient funds or failed to issue the Workers any paycheck whatsoever, Defendants willfully

failed to pay Plaintiffs the federal statutory minimum wage of $7.25 per hour for every compensable hour of labor they performed during each workweek, in violation of 29 U.S.C. § 216(a)(1).

118.    Defendants also willfully failed to pay Plaintiffs one and one-half times their regular hourly wage for every compensable hour of labor they performed over forty hours during each workweek, in violation of 29 U.S.C. § 216(a)(1).

119.    As a result of these violations, Plaintiffs suffered damages and may bring suit pursuant to 29 U.S.C. § 216(b).

120.    Plaintiffs are not subject to any exemptions from the FLSA's minimum wage or overtime provisions.

121.    Defendants are jointly and severally liable to Plaintiffs for these violations of their rights under the FLSA.

122.    Plaintiffs are entitled to an award of damages for unpaid minimum wages and overtime compensation, plus liquidated damages in an equal amount, as well as attorney's fees and costs, pursuant to 29 U.S.C. § 216(b).

**COUNT TWO:**
**VIOLATION OF ALABAMA LAW**
**(Breach of Contract)**
***As to All Plaintiffs***

123.    Plaintiffs re-allege and incorporate by reference the above paragraphs as though fully set forth herein.

124.    Plaintiffs bring this claim against Defendants for breach of contract under Alabama Law.

125.    The agreement between Plaintiffs and Defendants to compensate Plaintiffs in exchange for work they performed for Defendants constituted a contract between Plaintiffs and Defendants.

126.    Plaintiffs satisfactorily performed all duties and responsibilities required of them under the contract with Defendants.

127.    Defendants breached the contract with Plaintiffs by failing to pay Plaintiffs the agreed-upon wages for all the hours they worked.

128.    Defendants' breach of the contract caused Plaintiffs substantial injuries, for which they are entitled to actual and consequential damages and prejudgment interest.

### COUNT THREE:
### VIOLATION OF ALABAMA LAW
### (Civil Worthless Check Act)
***As to Plaintiffs Cesar Castro, Evelio Cruz Hernandez, Gervin Galvez, Javier Hernandez, Erick Luna Pantaleon, Wilfredo Ollarves, Migdoel Perez, Raquel Recinos, Denis Reyes, Claudio Sanchez Mairena, and Durlin Santiago***

129.    Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs as though set forth fully herein.

130.    Plaintiffs Cesar Castro, Evelio Cruz Hernandez, Gervin Galvez, Javier Hernandez, Erick Luna Pantaleon, Wilfredo Ollarves, Migdoel Perez, Raquel Recinos, Denis Reyes, Claudio Sanchez Mairena, and Durlin Santiago ("Worthless Check Plaintiffs") bring this claim against Defendants for violation of Alabama's Civil Worthless Check Act, Ala. Code § 6-5-285.

131.    On multiple occasions, Defendants issued paychecks to the Worthless Check Plaintiffs drawn on Defendants' accounts that lacked sufficient funds.

132.    Defendants knew that these checks would not be honored.

133.    Defendants drew these checks with the intent to defraud Plaintiffs.

134.    Defendants' issuance of these worthless checks caused the Worthless Check Plaintiffs substantial injuries, including lost wages, bank fees, and other financial losses flowing therefrom, for which they are entitled to compensatory and punitive damages and reasonable attorney's fees pursuant to Ala. Code § 6-5-285, and prejudgment interest.

## PRAYER FOR RELIEF

WHEREORE, Plaintiffs respectfully pray that this Court:

1. Grant judgment in favor of Plaintiffs and against Defendants, jointly and severally, for Plaintiffs' claims under the FLSA, and award Plaintiffs monetary damages for unpaid minimum wage and overtime wage payments, plus liquidated damages in an equal amount;

2. Grant judgment in favor of Plaintiffs and against Defendants, jointly and severally, for Plaintiffs' claims for breach of contract under Alabama law, and award Plaintiffs monetary damages for unpaid promised wage payments, plus prejudgment interest;

3. Grant judgment in favor of the Worthless Check Plaintiffs and against Defendants, jointly and severally, for Plaintiffs' claims under Alabama's Civil Worthless Check Act, and award the Worthless Check Plaintiffs compensatory and punitive damages, plus reasonable attorney's fees and prejudgment interest;

4. Award attorney's fees and costs;

5. Grant such additional and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a jury trial on all claims.

Dated: December 3, 2020                    Respectfully submitted,

                                          *s/ Jessica Vosburgh*
                                          Jessica Myers Vosburgh (ASB No. 1710-A00Y)
                                          ADELANTE ALABAMA WORKER CENTER
                                          2104 Chapel Hill Rd.
                                          Birmingham, AL 35216
                                          (205) 317-1481 (office)
                                          (203) 415-8368 (cell)
                                          jessica@adelantealabama.org

                                          *Attorney for Plaintiffs*